**CAPITOL LEASING COMPANY,**
Plaintiff–Appellant,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION,** Defendant–Appellee.

No. 92–3016.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1993.

Decided June 30, 1993.

Scott E. Tuckman (argued), Kwiatt & Silverman, Chicago, IL, for plaintiff-appellant.

Kenneth K. Dort, William A. Spence, David V. Goodsir, Freeborn & Peters, Chicago, IL, Joan E. Smiley (argued), F.D.I.C., Washington, DC, for defendant-appellee.

Before CUMMINGS and FLAUM, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

PER CURIAM.

Capitol Leasing Company (Capitol) appeals from the district court's dismissal of its suit against the Federal Deposit Insurance Corporation (FDIC), the receiver for the Cosmopolitan National Bank of Chicago (Cosmopolitan). The only issue on review is whether the district court correctly determined that it lacked subject matter jurisdiction over Capitol's claim against the FDIC for breach of contract. We affirm.

I

Capitol leased computer equipment to Cosmopolitan under the terms of an agreement. The bank failed in 1991. When the FDIC took over as receiver, it instructed Capitol and other potential creditors to file any claims against the bank no later than August 21, 1991. Three notices appeared in the *Chicago Daily Law Bulletin* between May and July 1991 apprising creditors of some of their rights. The notices stated that the FDIC must allow or disallow claims within 180 days of timely filing. R. 7, Exhibit A–1. Absent from the notices were any references to other crucial time limits governing such claims under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). 12 U.S.C. § 1821 (1989).

Capitol filed a proof of claim on June 17, 1991, seeking $95,087.20 for alleged breach of contract. On August 23, 1991, the FDIC notified Capitol by mail that it had been appointed receiver for the bank. Like the published notices, that letter contained no reference to the applicable statute of limitations or to the relevant sections—any sections, for that matter—of FIRREA.

The FDIC disallowed Capitol's claim. In the district court and on appeal, the FDIC asserts that it advised Capitol of that decision in a letter dated December 17, 1991—the 180th and final day it was authorized to make such a ruling. *See* 12 U.S.C. § 1821(d)(5)(A)(i). Capitol denies ever having received notice of disallowance. The letter, in any event, informs Capitol that "[i]f you so choose to contest this decision, you have sixty (60) days from the date of this letter in which to take action against the FDIC as receiver. If action is not taken within sixty (60) days, this claim decision is considered final, with no further rights or remedies with respect to such claim." R. 7, Exhibit A–4. As with the publication and actual notices, the letter of disallowance also fails to cite to the statute.

Capitol did not file an action within 60 days of the adverse decision. Instead, it filed suit 86 days after the FDIC had denied its claim, and 26 days after expiration of the statute of limitations. In response, the FDIC filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). The district court granted the motion, ruling that Capitol had failed to file its action in accordance with the time frame established by FIRREA. That statute, which provides for agency review or judicial determination of claims, states in relevant part:

Before the end of the 60–day period beginning on the earlier of—

(i) the end of the ·[180–day] period described in paragraph (5)(A)(i) [during which the FDIC must decide any claims against a depository institution for which it] is receiver; or

(ii) the date of any notice of disallowance of such claim pursuant to paragraph 5(A)(i),

the claimant may request administrative review of the claim . . . or file suit on such claim . . . in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia

. . . .

12 U.S.C. § 1821(d)(6)(A).

The district court held that compliance with the statutory claims process is mandatory. It rejected Capitol's argument that its claim should not be barred because it never received the disallowance notice. Also irrelevant, the court found, was any evidence tending to show insufficient compliance with the mailing requirements of § 1821(d)(5)(A)(iii). The court went on to observe that even if the FDIC had failed to notify Capitol that its claim had been disallowed, Capitol needed to bring suit within 60 days of either (1) the period beginning on the end of the 180–day determination period, or (2) the date of any notice of disallowance. Section 1821(d)(6)(A).

In this case, the two possible dates coincided. The 180th day after Capitol filed its claim fell on December 17, 1991, the same day the FDIC claims to have mailed its letter of disallowance. Accordingly, Capitol had 60 days, until February 15, 1992, to seek agency review or judicial determination of its claim. But it failed to file suit in the Northern District of Illinois until March 12, 1992, leading the district court to find the action time-barred.

On appeal, Capitol raises essentially the same arguments it advanced in the district court: (1) Dismissal under Rule 12(b)(1) was erroneous because there remained a question of fact as to whether (a) the FDIC properly tendered notice of disallowance, and (b) Capitol ever received the letter. (2) The FDIC is estopped from relying upon the statute of limitations provided for in § 1821(d)(6)(A) because its publication notice specifically stated that it would notify Capitol of any determination within 180 days after Capitol filed its claim. As the discussion below illustrates, neither argument is persuasive.

## II

### A

In ruling on a motion under Rule 12(b)(1), the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sladek v. Bell System Management Pension Plan*, 880 F.2d 972, 975 (7th Cir.1989). This court reviews dismissal for lack of subject matter jurisdiction *de novo*. *Joyce v. Joyce*, 975 F.2d 379, 382 (7th Cir. 1992) (citing *Houck ex rel. United States v. Folding Carton Administration Committee*, 881 F.2d 494, 503 (7th Cir.1989), *cert. denied,* 494 U.S. 1026, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990)).

### B

Capitol argues that the trial court should have afforded it an evidentiary hearing to resolve the factual issue whether it ever received proper notification that the FDIC had denied its claim. Appellant's Brief at 10. The FDIC, Capitol contends, in essence requested the district court to treat its motion as one for summary judgment pursuant to Federal Rule of Civil Procedure 56—that is, to make a determination as a matter of law. Capitol further asserts that the district court converted the motion for dismissal into one for summary judgment by considering and relying upon affidavits and documents submitted by the FDIC to show that it issued a notice of disallowance on December 17, 1991. This argument is unavailing because Capitol misconstrues the relationship between Rule 12(b)(1) and summary judgment.

Indisputably, a district court can transform a motion for dismissal under Federal Rule 12(b)(6) into one for summary judgment when "matters outside the pleading are presented to and not excluded by the court. . . ." Fed.R.Civ.P. 12(b)(6). *See also R.J.R. Services, Inc. v. Aetna Casualty and Surety Co.*, 895 F.2d 279, 281 (7th Cir.1989). Capitol's argument notwithstanding, the Federal Rules of Civil Procedure contain no analogous recognition that a 12(b)(1) motion can evolve into dismissal pursuant to Rule 56. *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir.1986) ("The omission from the Federal Rules of Civil Procedure of a provision for converting a Rule 12(b)(1) motion into a summary judgment motion if evidence is submitted with it was not an oversight."). Whereas a grant of summary judgment is a decision on the merits, *see Winslow v. Walters,* 815 F.2d 1114, 1116 (7th Cir.1987), a court must dismiss the case without ever reaching the merits if it concludes that it has no jurisdiction. *Shockley v. Jones*, 823 F.2d 1068, 1070 n. 1 (7th Cir.1987). In short, the question of jurisdiction is inappropriate for summary judgment, and discussing the interplay of Rule 12(b)(1) and Rule 56 verges on non sequitur. *Winslow*, 815 F.2d at 1116. *See generally Exchange National Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir.1976) (discussing relationship between Rules 12(b)(1) and 56). The FDIC did not request summary judgment. Nor could the district court have transformed the motion to dismiss into one for summary judgment.

Even if the district court did consider affidavits and other documentary evidence in granting the FDIC's motion, it did as it should have. "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979). *See also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Rennie v. Garrett*, 896 F.2d 1057, 1057–58 (7th Cir.1990). That aside, whether the FDIC sent proper notice of disallowance to Capitol bears little relevance to the question of jurisdiction. Capitol belabors the point that it never received the FDIC's letter of December 17, 1991. But, as the discussion below suggests, the statute of limitations in § 1821(d)(6)(A) provides that a claimant need not ever await a decision from the FDIC before it may initiate—indeed, before it must initiate—further agency review or judicial determination of a claim.

### C

Capitol argues that it should not be bound by the statute of limitations provided

for in 12 U.S.C. § 1821(d)(6)(A) because it never received word from the FDIC about disallowance of its claim. Whether the FDIC ever sent Capitol a proper notice of disallowance or whether Capitol ever received it is besides the point. The receiver's failure to notify potential claimants about their claims does not waive the statute of limitations set forth in § 1821(d)(6)(A).

■■■■ In considering § 1821(d)(6)(A) for the first time, this court follows the familiar maxim that interpretation of any statute begins with "the language of the statute itself." *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) (citation omitted). If the wording is unambiguous, this court must enforce the congressional intent embodied by the statute. *United States v. Clark*, 454 U.S. 555, 560, 102 S.Ct. 805, 809, 70 L.Ed.2d 768 (1982); *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir.1990). Only to avoid absurdity should a court depart from "plain" language. *Sisters of Third Order of St. Francis v. Swedishamerican Group Health Ben. Trust*, 901 F.2d 1369, 1372 (7th Cir. 1990).

Section 1821(d)(6)(A) unambiguously describes two different dates, the earlier of which starts the clock ticking on the 60–day period during which a creditor must file suit on a claim. The first is "the date of any

notice of disallowance of such claim...." Section 1821(d)(6)(A)(ii). The second date, which ordinarily will fall later than the first,[1] is an outer limit unrelated either to the date of disallowance or to notice of such a decision. It falls at the end of the 180 days in which the receiver is to make a determination on a claim. Section 1821(d)(6)(A)(i). If the receiver decides and disallows a claim before its statutory 180–day deadline has elapsed, the second date never comes into play. But if day 180 arrives and a creditor has heard nothing about its claim, then the 60–day period automatically starts running.[2] Four other courts of appeal have recognized the either/or nature of the statute of limitations in § 1821(d)(6)(A): A creditor must take action on a claim *either* within 60 days of receiving any notice of disallowance, *or* within 60 days after expiration of the 180–day period for consideration of the claim.[3]

If 60 days have elapsed before the claimant requests administrative review or files suit, "the claim shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." Section 1821(d)(6)(B).

■■■■ Capitol waited until March 12, 1992, 86 days after the FDIC states that it disal-

1. Unless, as here, the FDIC disallows the claim on the 180th and final day of its deadline for making such a determination.

2. At all events, 180 days is the maximum amount of time that a creditor must wait after filing a claim before it can initiate the process of agency review or judicial determination. Two-hundred forty days after the filing of a claim is the maximum amount of time it must wait before taking a course of action pursuant to § 1821(d)(6)(A).

3. *See, e.g., Henderson v. Bank of New England*, 986 F.2d 319, 320 (9th Cir.1993) ("If the claim is disallowed, or if the 180 days expire without a determination by the FDIC, then the claimant may request further administrative consideration of the claim, or seek judicial review."); *Althouse v. Resolution Trust Corp.*, 969 F.2d 1544, 1545–46 (3d Cir.1992) ("If a claim is disallowed or if the RTC fails to make a determination within the 180 day period, the claimant is permitted 60 days within which to seek administrative review or to file suit on the claim in district court."); *Meliezer*

*v. Resolution Trust Corp.*, 952 F.2d 879, 882 (5th Cir.1992) ("Section 1821(d)(6)(A) permits a claimant to file suit only after filing a claim with the RTC as receiver and then only if the receiver has disallowed the claim or the 180–day determination period has expired."); *Marc Development, Inc. v. Federal Deposit Insurance Corp.*, 771 F.Supp. 1163, 1166 (D.Utah 1991) ("Once the 180 day period has run or the claimant receives notice of disallowance, the claimant has 60 days...."), *aff'd and adopted*, 992 F.2d 1503 (10th Cir.1993).

But see *Distinguished Homes, Inc. v. Resolution Trust Corp.*, 1992 U.S.Dist.Lexis 10179, at *8 (D.R.I.1992) ("Only after the RTC takes action on the Plaintiff's claim may the Plaintiff bring suit in this Court pursuant to 12 U.S.C. § 1821(d)(6)(A)."); *Orchard Hills Cooperative Apartments, Inc. v. Resolution Trust Corp.*, 779 F.Supp. 104, 106 (C.D.Ill.1991) (only path to federal courts for claimant dissatisfied with results of administrative decision is to obtain *de novo* judicial review 60 days after notification of disallowance).

lowed the claim, and 26 days after the statute of limitations had expired. Even so, it urged the district court and now this court to disregard the plain language of the statute because it was unaware of time constraints built into the claims process. Section 1821(d)(6)(A) places an affirmative obligation on claimants to file suit at the end of the 180–day determination period, even in the absence of a notice of disallowance. Neither the receiver's failure to mail notice of its claim determination nor the claimant's failure to receive notification toll the statute of limitations. Cf. Meliezer v. Resolution Trust Corp., 952 F.2d 879, 882 (5th Cir.1992).

Capitol missed a deadline it easily could have discovered by reading the statute. The district court had no jurisdiction over its untimely claim and properly dismissed Capitol's suit pursuant to Rule 12(b)(1).

### D

■ Capitol speculates that it would have complied with the statute of limitations described in § 1821(d)(6)(A) if it had been aware of its obligation to file suit at the end of the 180–day determination period. Capitol's point has some merit. Neither the FDIC's notice nor its two letters to Capitol are paragons of informativeness. None mentions that creditors must file for agency or judicial review within the 60–day period that begins running directly after termination of the 180–day period. The disallowance letter of December 17, 1991 that Capitol claims never to have received is the only one of the three[4] notices to make any reference to the 60–day statute of limitations. It instructs Capitol to respond within 60 days of the date

of disallowance or surrender its claim. R. 7, Exhibit 4. The notices appearing in the Chicago Daily Law Bulletin comply with 18 U.S.C. § 1821(d)(3)(B), which instructs the receiver to publish notice to the depository institution's creditors, and the contested letter of December 17, 1991 meets the requirements of § 1821(d)(3)(C), which directs the receiver to mail similar notice to any creditor listed in the books of the savings institution. Significantly, however, neither section describes what information those notices must include.

Capitol asserts that laypersons rely upon the notices they receive from federal agencies. But it is irrelevant whether Capitol indeed was unrepresented by counsel[5] while it awaited news from the FDIC about its claim—waited unawares, Capitol alleges, that it need not have ever heard from FDIC, that it need not have waited more than 180 days to file suit, and that it should not have waited more than 240 days to take action under any circumstance. Capitol knew better than to wait forever, and it knew as well not to use a "layperson" to bring suit in federal court. Eventually—too late to be sure—a lawyer filed suit on behalf of Capitol in the Northern District of Illinois.

Even though Capitol assumed the risks by waiting too long to seek legal advice, the FDIC easily could make its notices more helpful to recipients. See, e.g., Federal Deposit Insurance Corp. v. Hanson, 799 F.Supp. 954, 957–58 (D.Minn.1992) (notice of disallowance cited to § 1821(d)(6)(A) and set forth the procedure for contesting the FDIC's decision).

---

4. The publication notice that appeared three times in The Chicago Daily Law Bulletin (on May 23, June 20, and July 18, 1991) stated that any claim filed on or before August 21, 1991 "must be allowed or disallowed by FDIC and notice provided to the claimant with respect to such claim within one-hundred eighty (180) days from the date such claim was filed with FDIC." R. 7, Exhibit A–1. The notice neither refers to § 1821(d)(6)(A) nor mentions that creditors have 60 days from the end of the 180–day determination period to file suit, seek further administrative remedies, or lose their claims. Capitol filed its claim on June 17, 1991. On August 23, 1991, the FDIC also notified Capitol by mail that it had been appointed receiver for the bank and that

Capitol had 30 days from the date of the letter to challenge the FDIC's decision to repudiate its contract. Again, the letter makes no mention of the 60–day window during which claimants must seek agency or judicial review for claims that the FDIC has disallowed. Also, the letter omits any statutory reference. R. 7, Exhibit A–2.

5. The record does not establish dispositively what role, if any, was played by lawyers during the claims process. All the record indicates is that the company comptroller filed the administrative proof of claim on June 17, 1991. R. 7, Exhibit A–3.

## III

For the foregoing reasons, we AFFIRM the district court's order of dismissal.